Carol L. Knowlton, Esquire
Gorski & Knowlton, PC
311 Whitehorse Ave., Suite A
Hamilton, NJ  08610
Attorneys for Debtor-in-Possession
Phone:  (609)964-4000
Fax:      (609)585-2553
Email:   cknowlton@gorskiknowlton.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In the Matter of | Chapter 11 |
| CHARLES J. ORLANDO | Case No.  13-23433-CMG |
| Debtor | Judge:  Christine M. Gravelle |
| | Hearing Date:  November 22, 2016 @ 10:00 |

**BRIEF IN SUPPORT OF OPPOSITION TO**
**MOTION TO RE-OPEN CASE AND FOR RECONSIDERATION OF**
**ORDER COMPELLING SECURED CREDITOR TO COMPLY WITH CONSENT ORDER**
**ENTERED MAY 22, 2015**
_____

On the brief:

Carol L. Knowlton, Esquire
GORSKI & KNOWLTON PC
Attorneys for Debtor, Charles J. Orlando

## TABLE OF CONTENTS

Table of Citations .................................................................................................................. ii

Table of Statutes .................................................................................................................. ii

I.  Introduction  ................................................................................................................... 1

II.  Requirements for Reconsideration ....................................................................... 1-2

III.  An Intervening Change in Controlling Law................................................................ 2

IV.  Availability of New Evidence (Not Available Previously)........................................... 2-6

V.  The Need to Correct Clear Error of Law or Prevent Manifest Injustice ................................. 6-9

VI.  Conclusion  ................................................................................................................... 9

## TABLE OF CITATIONS

N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995) ................... 1

United States v. Fiorelli, 3376 F.3d 282, 288 (3d Cir. 2003) .................................................. 2

Blystone v. Horn, 664 F.3d 397, 415 (3d Cir. 2011) ........................................................... 2, 6

Cox v. Horn, 757 F.3d 113, 120 (3d Cir. 2014).................................................................. 2, 8

Mellon Bank, N.A. v. Aetna Business Credit, 619 F.2d 1001, 1011 (3d Cir. 1980)................ 6

## TABLE OF STATUTES

Rule 60(b)(6)..................................................................................................................... 2, 8

11 U.S.C. §1123(b)(5).......................................................................................................... 3

I. INTRODUCTION

This brief is being submitted in opposition to Wells Fargo's motion for reconsideration of the Order compelling Wells Fargo to comply with the Consent Order entered on May 22, 2015 (Doc. #119 on the Court docket).

In this case, which was originally filed as a Chapter 13 proceeding and subsequently converted to Chapter 11, the individual debtor, Charles J. Orlando, filed a Chapter 11 Plan and Disclosure Statement on September 9, 2014. Wells Fargo, the movant herein, was listed as Class I in the Debtor's Plan. Shortly after the Plan was filed, Wells Fargo's attorneys contacted the undersigned and indicated that Wells Fargo objected to the treatment proposed in the Plan. Negotiations ensued, and after several months, an agreement was reached and a Consent Order resolving Wells Fargo's objection to the Debtor's Disclosure Statement and Plan was entered on May 22, 2015. After many months of attempts on the Debtor's part to have Wells Fargo correct its records to comply with the Consent Order, a motion to compel compliance was filed on July 8, 2016. Wells Fargo opposed the motion. The Court conducted two (2) hearings with regard to this motion. At the end of the second hearing, the Court granted the Debtor's motion.

Wells Fargo has moved for reconsideration. This brief is being submitted on behalf of the Debtor in opposition to Wells Fargo's motion.

II. REQUIREMENTS FOR RECONSIDERATION

Requirements for a motion for reconsideration are set forth in N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F. 3d 1194, 1218 (3d Cir. 1995):

> A proper motion to alter or amend judgment "must rely on one of three major grounds: '(1) an intervening change in controlling law; (2) the availability of new evidence [not available previously]; [or] (3) the need to correct clear error [of law] or prevent manifest injustice.' " Natural Resources Defense Council v. United States Envtl. Protection Agency, 705 F.Supp. 698, 702 (D.D.C. 1989).

1

The case cited by movant, United States v. Fiorelli, 337 F. 3d 282, 288 (3d Cir. 2003), states, "a motion under Rule 59(e) is a device to relitigate the original issue decided by the district court, and used to allege legal error." Nevertheless, Blystone v. Horn, 757 F.3d 397, 415 (3d Cir 2011) states:

> The scope of a motion for reconsideration, we have held, is extremely limited. Such motions are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence. *Howard Hess Dental Labs.,. Inc. v. Dentsply Int'l Inc., 602 F.3d 237*, 251 (3d Cir. 2010).

The Third Circuit, in Blystone, continues:

> We have made clear that " 'new evidence,' for reconsideration purposes, does not refer to evidence that a party . . . submits to the court after an adverse ruling. Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available." *Id.* At 252. Evidence that is not newly discovered, as so defined, cannot provide the basis for a successful motion for reconsideration. *Harsco Corp. v. Zlotnicki, 779 F.2d 906*, 909 (3d Cir. 1985).

Blystone, 664 F. 3d at 415-416.

As to relief under Rule 60(b)(6), movant cites cases that hold that this Rule allows the Court to grant relief from a final Order for any reason other than those listed elsewhere in Rule 60(b). One of the cases cited by the movant, Cox v. Horn, 757 F.3d 113, 120 (3d Cir. 2014), as movant acknowledges, restricts the application of Rule 60(b)(6) to "extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur."

Each of the above requirements is discussed at length below. The Debtor respectfully asserts that Wells Fargo's motion for reconsideration is totally without merit and must be denied.

### III. AN INTERVENING CHANGE IN CONTROLLING LAW

This first basis for reconsideration is not applicable in this case. It was not raised by the movant, nor has there been any change in controlling law.

### IV. AVAILABILITY OF NEW EVIDENCE (NOT AVAILABLE PREVIOUSLY)

2

This second basis for reconsideration also is not applicable in this case. All evidence to which movant refers was available previously, and, for the most part, was raised and argued at least once previously.

A.  Movant is now attempting to analyze the Debtor's Plan and to interpret what was proposed. Movant claims to know what the Debtor contemplated and claims that the Debtor accepted the number in the Proof of Claim. The flaws in this argument abound. The Plan was filed on September 9, 2014, so movant has had this evidence available for more than two (2) years. Movant has not demonstrated in any way what the Debtor contemplated. The number to which the movant refers is not the amount of the principal; it is the total amount claimed by the secured creditor. The exact language in the Plan, in the description of Class #1, is "Total <u>claim</u> amount = $444,655.20" (emphasis supplied). The Debtor did not have to formally object to Wells Fargo's Proof of Claim because shortly after the Plan was filed, negotiations with Wells Fargo's then attorney commenced. These negotiations ensued for several months, and the confirmation had to be postponed. Ultimately, an amicable resolution was reached, which modified the terms of the Plan in several ways, including a different total amount due, removing the necessity for the Debtor to make a lump sum payment of $20,000, increasing the interest rate from what was proposed in the Plan, and all of the other terms set forth in the Consent Order.

Moreover, movant acknowledges that the Order Confirming the Plan provides that the treatment of Wells Fargo's claim would be modified pursuant to a separate Consent Order. As discussed several times in previous pleadings and at oral argument, the Consent Order does not clearly provide for compound interest. In fact, it does not mention compound interest or "interest on interest" at all.

B.  Next, the movant again (for at least the third time) argues that the loan was subject to the Anti-Modification Clause of the Bankruptcy Code, **11 U.S.C. §1123(b)(5)**. **11 U.S.C. §1123(b)(5)** provides, in pertinent part:

(b) subject to Subsection (a) of this section, a Plan may –

3

\* \* \*

(5) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the Debtor's principal residence . . . .

\* \* \*

The fatal flaw in Wells Fargo's argument is that the mortgage in question is not secured only by a security interest in the Debtor's residence. Attached hereto and made a part hereof as **Exhibit A** is a copy of the Mortgage that was attached to Wells Fargo's Proof of Claim. At the top of the third page of the mortgage, at Paragraph (c), the security interest includes all equipment and personal property. That language alone removes it from the anti-modification clause. In addition, on the next page of the Mortgage, there are restrictions as to the Borrower's accepting advance rents from tenants. There is also on the same page, at Paragraph 8, reference to the Lender's right to seek a rent receiver upon acceleration of the loan. Further, the form of the Mortgage used by the Lender was a Blumberg form for an individual or corporation (see top of first page of the Mortgage).

The second flaw in the movant's argument is that this is not newly available evidence. The Mortgage itself has been available since 1991, when it was signed and recorded. As I have expressed on the record at both hearings on the motion to compel compliance, the fact that the Mortgage was not subject to the Anti-Modification Clause was acknowledged by Wells Fargo's attorneys during the negotiation about the Debtor's Plan, in 2014 to 2015, and that fact was a factor in the ultimate resolution.

Accordingly, for movant to even attempt to raise this issue again is highly inappropriate.

C.  The movant also raises the fact that the loan had matured. Again, this is not evidence that was previously unavailable. The 1991 Mortgage sets forth the maturity date, as does the Note. Movant had plenty of opportunity to raise this point before. The parties to the negotiations regarding the Debtor's Plan were well aware that the loan had matured. Nevertheless, the Lender chose to resolve the

4

matter amicably. So, the movant's present argument that Wells Fargo had the right to demand immediate payment in full or to seek relief from the stay to foreclosure is moot.

    D.    Movant next argues that the Mortgage allows for interest on advances made and cites a section of the Mortgage. Again, the Mortgage has been available since 1991, so it is not newly available evidence. Movant had the opportunity to raise this issue previously, but seems to have thought it was not important enough to do so until now. There are two (2) other reasons that the movant's argument on this point should not prevail:

    (1) It has nothing to do with compound interest, so it is not applicable; and

    (2) The Mortgage may allow interest on advances made, but the Consent Order does not, nor was it negotiated between the parties.

    E.    On Page 4 of its Letter Brief, movant makes the self-serving argument that the monthly principal and interest amount of $2,355.85 can only be interpreted as Wells Fargo sees it. That argument lacks any merit. It may be that the monthly amount is the same as it would be per the Amortization Schedule attached to movant's motion. It is irrelevant here because the Amortization Schedule was not mentioned or supplied during negotiations or with the Consent Order. Nor did Wells Fargo ever disclose to the Debtor that it was basing its calculations on a "principal" amount due of $414,000. Also, the pleadings in the case do not support movant's argument. For example, Debtor's Schedule J, filed in 2013 at the commencement of the case, reflects an approximate monthly mortgage payment of $2,000.00, not including real estate taxes or homeowner's insurance. The Detailed Expense Attachment to Schedule J reflects $1,000 per month for real estate taxes. So, by adding something for homeowner's insurance, it is not remarkable that the Debtor accepted that a new total monthly payment of $3,592, as set forth in the Consent Order, was correct without making a detailed analysis. This is buttressed by the fact that the Proof of Claim filed by Wells Fargo listed the principal amount due as of the commencement of the case as $179,210.33.

5

None of the above arguments made by the movant presents evidence that was not previously available. Thus, per the Blystone case, *supra*, the movant has not provided a basis for a successful motion for reconsideration.

### V. THE NEED TO CORRECT CLEAR ERROR OF LAW OR PREVENT MANIFEST INJUSTICE

A.  Movant claims that the Court failed to determine whether the Consent Order was clear or ambiguous and that this was a clear error of law. The cases cited by the movant are inapposite here in light of the cases dealing with compound interest. The cases that disfavor compound interest clearly hold that unless there was a clear agreement between the parties to allow compound interest, then compound interest is not allowed. Nowhere in the Consent Order is the term "compound interest" or "interest on interest" set forth. Nowhere in the Consent Order does it say that the new principal amount is $414,000. The opposite is true – the principal, interest, and advances are set forth separately.

The movant cites Mellon Bank, N.A. v. Aetna Business Credit, 619 F.2d 1001, 1011 (3d Cir. 1980), for the proposition that:

> It is the role of the judge to consider the words of the contract, the alternate meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning. The trial judge must then determine if a full evidentiary hearing is warranted.

This Court did exactly that. It considered the words of the Consent Order, the alternate meaning suggested (that the new principal was $414,000), and the nature of the objective evidence to be offered in support of that meaning (the Amortization Schedule). The Court then determined that an evidentiary hearing was not warranted, in light of the lack of evidence that compound interest was the intention of both parties to the Consent Order.

Movant again cites the Mellon Bank case for the proposition that "in construing a contract, a court's paramount consideration is the intent of the parties." 619 F.2d at 1009. This proposition strongly

supports the Debtor's position and is consistent with the applicable case law on compound interest. Movant has produced no evidence that the Debtor intended to pay compound interest.

As to the footnote at the bottom of page 6 of movant's Letter Brief, it is both irrelevant and somewhat offensive. The fact is that no Amortization Schedule was provided by Wells Fargo and neither the Debtor nor Debtor's attorney would have reason to obtain one.

B. Movant's next argument is that the Court failed to give due weight to the facts and circumstances leading to confirmation. Movant's argument here is factually erroneous. Its interpretation of the Debtor's Plan taking precedence over the subsequent negotiations and Consent Order is incorrect, as is its continuing argument about the non-applicable Anti-Modification Clause of the Bankruptcy Code and the rights of Wells Fargo as a result of the maturity of the loan. It may be that Wells Fargo had certain rights due to the loan having matured, but it chose not to exercise those rights, and it entered into an agreement extending the maturity date to 2045.

C. Movant's next claim is that the Court failed to give due weight to the Debtor's conduct post-confirmation. The issue of the delay in filing the Debtor's motion to compel compliance was addressed in the Debtor's certification, as well as during at least one if not both hearings on the motion to compel compliance. Again, the Debtor tried to deal with Wells Fargo directly and amicably before resorting to the motion. Wells Fargo did correct some of the problems, such as the lowering of the interest rate, but it took several months of contact between the parties. In the meantime, the Debtor made payments in good faith, and because he did not want to be in breach of the Order himself. Also, the movant's statement that the motion to compel "sought a new interpretation of the Consent Order that radically alters Wells Fargo's treatment . . . ." is self-serving, not factual, and disingenuous at best.

D. Next, the movant claims that the Court failed to consider Wells Fargo's response and alleges it was prejudiced. It was not prejudiced, for two (2) reasons:

7

1. Though it is true that the Court gave Wells Fargo until October 3, 2016 to file a response, that response was not filed until 7:00 p.m. on October 3rd. It is not surprising, therefore, that the Court did not have time to review it. Nevertheless, the Court gave Wells Fargo's counsel the opportunity to argue everything that was in the response, and counsel did so, so Wells Fargo's response was, in effect, considered by the Court. It is noteworthy that Wells Fargo's counsel did not raise the point at oral argument or suggest that the Court needed to review her response.

2. Most of Wells Fargo's response was inappropriate anyway. That is, at the hearing on September 6, 2016, the Court adjourned the hearing to allow the undersigned to address the sole issue of compound interest. The Court allowed Wells Fargo until October 3, 2016 to respond to my brief, not to raise other issues. Per the Court's instructions, I limited my submission to the issue of compound interest. Wells Fargo's attorney did not. Its references to the Proof of Claim, to whether or not the Plan had been consummated, to the HAMP program are irrelevant. Its response did not even address the cases concerning compound interest.

E.    Movant's entire argument in support of reconsideration pursuant to Rule 60(b)(6) consists of one sentence: "as detailed herein, the Order Compelling provides an *unexpected* hardship to Wells Fargo." (emphasis supplied)

That argument fails. The Cox case that the movant cited, restricts the application of Rule 60(b)(6) to motions for reconsideration to "*extraordinary* circumstances where, without such relief, *an extreme and* unexpected hardship would occur." 757 F.3d at 120. (emphasis supplied) Movant does not attempt to demonstrate that the circumstances of this case are extraordinary, nor does it argue an extreme hardship, yet the cases require that the circumstances be extraordinary and the hardship both extreme and unexpected.

Movant is not entitled to relief under Rule 60(b)(6)

## VI. CONCLUSION

As discussed above, the three (3) major grounds for a successful motion for reconsideration are (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice. In this case, there was no issue of an intervening change in controlling law. All of the evidence presented by the movant was previously available. The movant did not demonstrate a clear error of law, nor did it demonstrate that a manifest injustice would occur if reconsideration is not granted. For these reasons, the undersigned, on behalf of the Debtor, Charles J. Orlando, respectfully urges the Court that the motion for reconsideration should be denied in its entirety.

Respectfully submitted,

GORSKI & KNOWLTON PC
Attorneys for Debtor

*/s/ Carol L. Knowlton*
By:_____
Carol L. Knowlton

Dated: November 15, 2016

9